J-A17010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH MICHAEL DIOTTAVIO | : | |
| | : | |
| Appellant | : | No. 2817 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 28, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000014-2019

BEFORE: BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                                **FILED OCTOBER 16, 2020**

Joseph Michael Diottavio appeals from the judgment of sentence of one and one-half to three years of imprisonment imposed after he was convicted of fleeing or attempting to elude a police officer and related summary offenses. We affirm.

On October 6, 2019, Officer Christian Yeager of the West Caln Police Department and an officer-trainee, Kyle O'Brien, were patrolling in West Caln Township in an unmarked police truck when they spotted Appellant driving his distinctive vehicle.[1] Aware that Appellant had an outstanding warrant for his arrest, and after discovering that the registration for his vehicle had expired,

---

[1] In the course of an unrelated investigation of an associate of Appellant, Brian Peachey, West Caln Police Officer Christian Yeager became familiar with Appellant and his vehicle, a black Ford Focus sedan with a unique matte finish. *See* N.T. Jury Trial, 6/3/19, at 23-30. During this prior investigation, Officer Yeager viewed pictures of Appellant from Facebook and reviewed his driving record. *Id*. at 23-25.

Officer Yeager activated his lights and sirens to initiate a traffic stop. *Id*. at 34. Appellant pulled his vehicle over to the side of the road.

Dressed in a standard police uniform, Officer Yeager exited his truck and began walking towards Appellant's vehicle. N.T. Jury Trial, 6/3/19, at 31. As Officer Yeager approached, he saw Appellant sitting in the driver's seat with his hand partially dangling from the open window. Once he was within approximately twelve feet, Officer Yeager and Appellant locked eyes. *Id*. at 36-37, 91. Before Officer Yeager could reach the vehicle, Appellant suddenly accelerated and sped away. *Id*. at 38-39. Officer Yeager immediately pursued Appellant with his lights and sirens activated. *Id*. at 38-39.

Appellant led Officer Yeager on a high-speed car chase through western Chester County and into Lancaster County, Pennsylvania. *Id*. at 42-51. Throughout, Appellant dangerously exceeded the posted speed limits, disregarded traffic signals, and drove around vehicles that were traveling in the opposite lane of traffic. *Id*. Shortly after crossing into Lancaster County, Officer Yeager determined that the pursuit had become too unsafe and abandoned the chase. *Id*. at 52. One month later, Appellant was arrested and charged with fleeing or attempting to elude a police officer and related summary traffic offenses.

On June 3, 2019, Appellant proceeded to a jury trial on the fleeing or attempting to elude a police officer charge. At trial, Officer Yeager positively identified Appellant as the driver of the Ford Focus. *Id*. at 51-52. Appellant did not testify, but pursued a theory of mistaken identity through his cross-

examination of Officer Yeager, questioning whether the driver of the vehicle could have been Brian Peachey, the subject of the prior investigation. However, Officer Yeager was certain that the driver was not Mr. Peachy, since he knew Mr. Peachey well and would have recognized him. *Id*. at 56-57. At the conclusion of the evidence, the jury found Appellant guilty of fleeing or attempting to elude a police officer. On the same date, the trial court found Appellant guilty of the aforementioned summary offenses.

On August 28, 2019, Appellant was sentenced to one and one-half to three years of imprisonment. Appellant did not file a post-sentence motion, but did submit a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thereafter, the trial court authored its Rule 1925(a) opinion.

Appellant presents the following issues for our review:

1. Whether the evidence was insufficient to support the charge of fleeing or attempting to elude a police officer, 75 Pa.C.S. § 3733(a), where the Commonwealth failed to prove the identity of the driver of the vehicle.

2. Whether the trial court committed an error of law and/or abused its discretion by failing to give Appellant's proposed jury instruction regarding eyewitness identifications.

Appellant's brief at 4.

Appellant's first issue challenges the sufficiency of the evidence to support his fleeing and eluding conviction. *Id*. at 14. Our standard of review when considering a challenge to the sufficiency of the evidence is:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa.Super. 2017)

(citations and quotation marks omitted).

The Pennsylvania Crimes Code defines fleeing or attempting to elude a police officer as follows:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2)
>
> . . . .
>
> An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:
>
> > . . . .
> >
> > endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase

- 4 -

75 Pa.C.S. § 3733(a), (a.2)(2)(iii).

The crux of Appellant's argument is that Officer Yeager's testimony, alone, was not enough to establish Appellant's identity as the driver of the distinctive vehicle that fled on October 6, 2019. **See** Appellant's brief at 15-16. The trial court disagreed and explained its reasoning as follows:

> Based on the record, it is clear that the Commonwealth presented ample testimony and evidence from which the jury could find that every element of the crime of fleeing and eluding was established beyond a reasonable doubt. Even though [A]ppellant tried to claim that another person was driving his vehicle at the time in question, based on the verdict, it is clear that the jury found Officer Yeager's testimony credible and determined that [A]ppellant's claim that he was not driving [was] not credible. It was within the jury's province to do so. Accordingly, the court finds that the evidence introduced at trial was sufficient as a matter of law to support the jury's guilty verdict and therefore, [A]ppellant is not entitled to relief on this basis.

Trial Court Opinion, 1/9/2020, at 4. Our review of the certified record supports the trial court's findings.

It is well-established that "a solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." **Commonwealth v. Johnson**, 180 A.3d 474, 479 (Pa.Super. 2018). Officer Yeager positively identified Appellant as the driver of the vehicle. **See** N.T. Jury Trial, 6/3/19, at 89-91. Accordingly, viewing the evidence in the light most favorable to the Commonwealth, this identification was sufficient to establish Appellant's identity.

In his brief, Appellant concedes that "a single witness may be sufficient to sustain a conviction," but advocates for a change in the law because

eyewitness testimony is "one of the least reliable forms of evidence." Appellant's brief at 15-16. However, Appellant's argument misconstrues the nature of a sufficiency claim. In reviewing challenges to the sufficiency of the evidence we do not engage in an evaluation of the accuracy or reliability of a witness's testimony, as long as the testimony is not "so unreliable and contradictory as to make any verdict based thereon pure conjecture." *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993); *Commonwealth v. Farquarson*, 354 A.2d 545, 550 (Pa. 1976). That was not the case here. Accordingly, such credibility analyses are irrelevant to our sufficiency analysis and no relief is due. *See Johnson*, *supra* at 478.

Next, Appellant contends that the trial court erred when it refused to give a jury instruction that he requested. In reviewing a challenge to a jury instruction we consider the entire charge, not merely discrete portions of it. *See Commonwealth v. Eichinger*, 915 A.2d 1122, 1138 (Pa. 2007) (citing *Commonwealth v. Stokes*, 615 A.2d 704, 708 (Pa. 1992)). The trial court has wide latitude when fashioning the jury instructions. *Id*. Accordingly, we will not find an abuse of discretion unless we find that the concepts at issue were not clearly and accurately presented to the jury. *Id*.

During the charge conference, Appellant requested that the trial court read the following eyewitness identification instruction to the jury:

> Defendant, as part of his general denial of guilt, contends that the Commonwealth has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense. The burden of proving the identity

of the person who committed the crime is upon the Commonwealth. For you to find this defendant guilty, the Commonwealth must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person. You must determine, therefore, not only whether the Commonwealth has proven each and every element of the offense charged beyond a reasonable doubt, but also whether the Commonwealth has proven beyond a reasonable doubt that this defendant is the person who committed it.

The Commonwealth has presented the testimony of Officer Christian Yeager. You will recall that this witness identified the defendant in court as the person who committed the crime of fleeing or attempting to elude a police officer. According to the witness, his identification of the defendant was based upon the observations and perceptions that he made of the perpetrator at the time the offense was being committed. It is your function to determine whether the witness's identification of the defendant is reliable and believable, or whether it is based on a mistake or for any reason is not worthy of belief. You must decide whether it is sufficiently reliable evidence that this defendant is the person who committed the offense charged.

Eyewitness identification evidence must be scrutinized carefully. Human beings have the ability to recognize other people from past experiences and to identify them at a later time, but research has shown that there are risks of making mistaken identifications. That research has focused on the nature of memory and the factors that affect the reliability of eyewitness identifications.

Human memory is not foolproof. Research has revealed that human memory is not like a video recording that a witness need only replay to remember what happened. Memory is far more complex. The process of remembering consists of three stages: acquisition – the perception of the original event; retention – the period of time that passes between the event and the eventual recollection of a piece of information; and retrieval – the stage during which a person recalls stored information. At each of these stages, memory can be affected by a variety of factors.

In evaluating this identification, you should consider the observations and perceptions on which the identification was

based, the witness's ability to make those observations and perceive events, and the circumstances under which the identification was made. Although nothing may appear more convincing than a witness's categorical identification of a perpetrator, you must critically analyze such testimony. Such identifications, even if made in good faith, may be mistaken. Therefore, when analyzing such testimony, be advised that witness's level of confidence, standing alone, may not be an indication of the reliability of the identification.

N.T. Jury Trial, 6/3/19, at 114-16. When asked, trial counsel explained that she gleaned this language from the New Jersey standard jury instruction for eyewitness identifications. *Id*.

After argument, the trial court declined to give the requested instruction, reasoning that since Appellant had not presented an expert to testify to the science behind eye witness identifications, an instruction informing the jury of scientific research in this area would have been inappropriate. *Id*. at 116 (concluding that the requested instruction improperly contained facts not admitted into evidence). Accordingly, the court said it would deliver the Pennsylvania standard jury instruction on eyewitness identification, since it does not include the scientific portions of the New Jersey instruction. However, the trial court encouraged defense counsel to raise the reliability of the eyewitness identification in her closing arguments. *Id*. at 117.

In closing argument, trial counsel spoke at length about the unreliability of Officer Yeager's eyewitness testimony. *See* N.T. Jury Trial, 6/4/19, at 125-

33. Thereafter, the trial court than delivered the following standard jury instruction regarding eyewitness identification:

> Now, it should be said in this case both sides argued well with their eye witness identification. So let me talk about identification.
>
> Officer Yeager identified [Appellant] as the person who committed this crime. In evaluating Officer Yeager's testimony, in addition to the other instructions I will have provided to you, you should consider the following factors:
>
> Did the witness have a good opportunity to observe the perpetrator of this offense? Was there sufficient lighting for him to make his observations? Was he close enough to the individual to note any significant things about physical characteristics, facial hair, clothing, etc.? Had he made a prior identification of this person as the defendant as the person who committed these crimes? Was his identification positive? Or was it qualified by any hedging or inconsistencies? Did – during the course of this case, did the witness identify anyone else as the perpetrator?
>
> In considering whether or not to accept the testimony of Officer Yeager in this regard, you should consider all of the circumstances under which the identification [w]as made. Furthermore, you should consider all evidence relative to the question of who committed the crime, including the testimony of any witness from which identity, or non-identity of the perpetrator of the crimes may be inferred. You cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed, but that the defendant committed it.

*Id*. at 167-68. Trial counsel did not raise a contemporaneous objection to the above quoted instruction. After the trial court finished reading the entire jury charge, the court asked trial counsel and the Commonwealth if they had any corrections, to which counsel responded "[n]o, [y]our [H]onor." *Id*. at 170.

Appellant's failure to contemporaneously object to the jury instruction is fatal to his claim of trial court error. As the Pennsylvania Supreme Court held in **Commonwealth v. Pressley**, 887 A.2d 220 (Pa. 2005):

> under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

**Id**. at 225. Here, no such objection was lodged. Accordingly, Appellant's second claim is waived.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/20

---

[2] Even if the issue had been properly preserved, Appellant's allegation of trial court error still fails. Here, the jury was given the standard Pennsylvania jury instruction, which properly advised the jurors on how to evaluate eye witness testimony in Pennsylvania. Additionally, since Appellant did not present expert testimony, the proposed charge was not warranted. **See Commonwealth v. Boyle**, 733 A.2d 633, 639 (Pa.Super. 1999); **see also Commonwealth v. Browdie**, 671 A.2d 668, 673 (Pa. 1996) (explaining that a particular jury instruction is only warranted when there is evidence to support such an instruction). Here, the parts of the requested jury instruction that differ from the standard Pennsylvania jury instruction instruct the jury on scientific research surrounding eye witness testimony. Since Appellant did not call an expert witness, he did not lay the foundation necessary to support issuance of the requested instruction. Accordingly, the trial court did not err when it declined to give it.